Ruffin, C. J.
 

 As one, when he is about becoming a surety with others, may stipulate for a separate indemnity from the principal to him, and the co-sureties would be only entitled to a surplus after his reimbursement,
 
 Moore
 
 v. Moore, 4 Dev. 358; so, there can be no doubt, that, after two persons have become sureties for a common principal, they may by agreement between themselves renounce their right to take benefit from-any securities they may respectively obtain, and each undertake to look out for himself exclusively for an indemnity from the principal, or for contribution from another co-surety. But the defence fails in this ease, because the defendant
 
 *635
 
 has not established the alleged agreement between W. Me-Murray and himself. It behooved him to establish it on the hearing, and he cannot ask, that it should be made, in part, the subject of the inquiry before the Master) which, otherwise, is a matter of course in cases of this nature. For the alleged agreement is, in its nature, a bar to the right of contribution, and, therefore, to a reference in order to take the accounts, that may be necessary to exhibit the advances by each of the co-sureties, the sums reimbursed to them, and every other mátter, that is requisite to the ascertainment of the sum to be contributed by the one surety to the other. Consequently, the existence of the agreement cannot be made a point of the reference, but must be disposed of before a reference can be directed. As the defendant has given no evidence of the agreement, it must be declared that he has failed to establish it.
 

 It follows, that the usual inquiries must be directed, including all the dealings as mentioned above and in the pleadings, and the sums received by the defendant as mentioned in the answer, or that may be established by the plaintiffs; so that it may appear, how much one of these parties is in advance more than the other. The points made in the answer, as to the defendants’ right to seek satisfaction,'after he had paid one-half of the debt from the principal or from Mitchell, as for a separate demand, or as to the application of the payments received from Mitchell to other debts due to the defendant, or as to hid right, if any thing should be found due from him to William McMurray, to retain the same in satisfaction of other demands the defendant has against William McMurry in the first place: Those points, we say, will more properly come up when the report shall be made, ascertaining all the facts involved in those positions. At present it would be premature to give any precise instructions to the Master, seeing that those are all proper points of fact for an inquiry, and they do not distinctly appear in the pleadings or evidence. ' But without making any specific declaration thereon, but merely in aid of the Master, we may properly state, that there can be no doubt, that the. .assignment to the plaintiff Long can operate only to transfer
 
 *636
 
 the balance due to the assignor from the defendant. If William McMurray were to sue the defendant for this demand, the defendant would be entitled to a deduction or set off for sums as william McMurray owed to him; and he cannot give to his assignee a right for more than he could, himself, recover.
 
 Winborn
 
 v.
 
 Gorrell,
 
 3 Ired. Eq. 117.
 
 Moody
 
 v.
 
 Sitton, 2
 
 Ired. Eq. 382. Nay, even if the defendant had not actually paid the debts for which he was the surety of William McMurray, yet upon the insolvency of William McMurray, the defendant was, in respect of his liability as his surety, entitled to retain for his indemnity any ¡debt he owed William McMurray, and the latter could not assign to another creditor, nor even to one for value then paid, his demand on the defendant.
 
 Williams
 
 v. Helme, 1 Dev. Eq. 151. So, a prior assignment of this demand to a trustee for the defendant, and others will be entitled to the preference, .as far as the debts thereby secured remain unsatisfied.
 

 As to the application of the money received from Mitchell, ¡the rule is, that it is to be made according to the direction .given by Mitchell at. the time of payment, if any were given by him, either expressly or to be collected from circumstances. But if none such were given, then the defendant hath the right to apply those payments.
 

 It must not be supposed, that the court has passed over, unobserved, the circumstance, that after the death of John McMurray., his executors gave a note for the debt, with the same ¡sureties ; and that they are not parties to this suit, nor charged and admitted to be insolvent.
 
 Prima facie,
 
 by giving such a note, the persons who were the executors made the •debt their own ; but, clearly, both the sureties now before the .court considered it otherwise, and treat the executors in the pleadings in'this cause, as not binding themselves, but only giving a note
 
 as
 
 executors for the purpose of keeping the debt .afloat, apparently for the benefit of delay to the sureties. For ■the answer admits, that notwithstanding the new note, it was ¡understood, that the sureties would be obliged to pay the debt, .and that-it would be mostly their loss. Hence, neither the
 
 *637
 
 bill nor the answer so much as mention who were John Murray’s executors, but merely state, that the executors gave the note after the death of the testator, on which the judgment was taken; and no objection taken on this point, at the bar.— As to the insolvency of John McMurray’s estate, though not distinctly admitted to be absolute, it is sufficiently admitted to send the case before the Master. The answer states, that the estate is partially insolvent; and the only thing suggested against entire insolvency, is the supposition, that it has a demand of $10,000 or $12,000 on Mitchell’s estate, and that the latter estate is further supposed able to pay some dividend on its debts, according to the laws of Mississippi. From the nature of these admissions, the question of the solvency of John McMurray’s estate can only be ascertained, if the parties insist on it, by taking accounts of the estates of John McMurray and Mitchell, in order to ascertain the extent of their insolvency, which to some extent is admitted. Therefore, there must be a reference to the master to take all the accounts involved in the cause, with directions to state such special matters as the parties may require.
 

 Per Curiam, - Decree accordingly.